<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **CHAD MAIN**, <br><br>            Appellant, <br><br>       v. <br><br> **BLOCKFI, INC.**, <br><br>            Appellee. | Civil Action No. 24-5592 (ZNQ) <br><br> **OPINION** |

<u>**QURAISHI, District Judge**</u>

**THIS MATTER** comes before the Court upon *pro se* Appellant Chad Main's ("Main") appeal of the Bankruptcy Court's April 10, 2024 Order ("April 10, 2024 Order") that sustained the Wind-Down Debtors' Seventeenth Omnibus Objection to Claims in a Chapter 11 Bankruptcy proceeding. (ECF No. 1.) Main filed an appellate brief, ("Main Br.," ECF No. 6); Appellee-Debtor BlockFi entities[1] (collectively, "BlockFi"), filed a response brief, ("BlockFi Br.," ECF No. 8); and Main filed a reply brief, ("Main's Reply Br.," ECF No. 9). The Court has carefully considered the parties' submissions and decides the appeal without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will **AFFIRM** the Bankruptcy Court's April 10, 2024 Order.

---

[1] Although the Court's docket for this matter shows that only BlockFi Inc. is responding to this appeal, the Appellee-Debtors in this Chapter 11 case are actually a collection of the following BlockFi entities: BlockFi Inc.; BlockFi Trading LLC; BlockFi Lending LLC; BlockFi Wallet LLC; BlockFi Ventures LLC; BlockFi International Ltd.; BlockFi Investment Products LLC; BlockFi Services, Inc.; and BlockFi Lending II LLC.

1

I.      **BACKGROUND AND PROCEDURAL HISTORY**

For context and in briefest terms, the April 10, 2024 Order under appeal sustained BlockFi's objection to several claims made by its creditors, including Main's claim. (Appellate Record ("AR") at 1697–1731).[2] The effect of the Order was to confirm Main's status as an unsecured creditor rather than a secured creditor. Under the Confirmed Bankruptcy Plan in BlockFi's Chapter 11 case, Main was ineligible for return of the 100% return of the Bitcoin that he provided to BlockFi as collateral for a loan. Rather, he would receive 93.2%–100% of the dollar value of his Bitcoin collateral as of the date BlockFi filed its petition for bankruptcy, minus Main's outstanding loan balance.

A more detailed account is required. On March 18, 2022, Main and BlockFi entered into a Loan and Security Agreement (the Main Loan Agreement, "MLA") whereby Main borrowed $20,400 from BlockFi for which Main pledged 1.33 Bitcoin as collateral. (*Id.* at 1653.)[3] Months later, on November 28, 2022, BlockFi petitioned for bankruptcy protection under Chapter 11 of the Bankruptcy Code. (*Id.* at 310.) On March 12, 2023, Main timely filed his proof of claim in which he asserted ownership of his Bitcoin and demanded a 100% refund in kind. (*Id.* at 1–7.) He was assigned claim number 5647. (*Id.* at 1.)

On August 3, 2023, BlockFi filed its *Third Amended Joint Chapter 11 Plan of BlockFi Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (the "Confirmed Bankruptcy Plan"). (*Id.* at 292, 1205, 1228.) Creditors in the same lending program as Main were classified under Class 3-b. Members in the 3-b classification had two options. They could opt

---

[2] "AR" refers to the appellate record filed by BlockFi as a two-part Appendix attached to its brief. (*See* ECF Nos. 8-1 and 8-2.) The Court cites to the record on appeal by its internal pagination.

[3] The actual MLA is not in the record on this appeal. Page 1653 of the appellate record is a page from Main's creditor response in which he indirectly confirms that he has a copy of the agreement in a footnote. On this appeal, the parties do not dispute the validity of the MLA.

into a loan repayment treatment to repay their loan and receive cryptocurrency in the value of the loan repayment amount (*id.* at 406–410), or they could have their outstanding loan balance set off against the value of their claim and receive a pro-rata distribution on the remaining claim amount in either digital assets or cash (*id.* at 1314–15).

On October 3, 2023 the Bankruptcy Court approved BlockFi's Confirmed Bankruptcy Plan and it went into effect on October 24, 2023. (*Id.* at 1228, 1366.) On March 4, 2024, BlockFi filed its Seventeenth Omnibus Objection—the objection relevant to this appeal—seeking to modify Main's claim and others. (*Id.* at 1424, 1466.) Specifically, BlockFi objected to Main's assertion that he was a secured creditor.[4] (*Id.*) Additionally, the Wind-Down Debtors "request[ed] that the Court sustain th[e] Objection and approve the modification and [a]llowance of certain [d]isputed [c]laims reflected on Schedule 1, disallow the remaining . . . [d]isputed [c]laims on Schedule 1, and authorize the Wind-Down Debtors to instruct the Claims and Noticing Agent to expunge such disallowed claims from the register." (*Id.* at 1430.) In response to the objection, the Bankruptcy Court entered the April 10, 2025 Order, which granted BlockFi's objection to Main's claim together with others. (*Id.* at 1697.) This appeal followed.

## II. <u>LEGAL STANDARD</u>

A district court has appellate jurisdiction over a bankruptcy court's final judgments, orders, and decrees. 28 U.S.C. § 158(a). A district court reviews a bankruptcy court's "legal determinations *de novo*, its factual findings for clear error and its exercise of discretion for an abuse thereof." *In re Rashid*, 210 F.3d 201, 205 (3d Cir. 2000); *see In re Cohn*, 54 F.3d 1108, 1113 (3d Cir. 1995) ("On appeal the district court . . . may affirm, modify, or reverse a bankruptcy

---

[4] BlockFi attached a "Schedule 1" to its Seventeenth Omnibus Objection. (AR at 1454–82.) Schedule 1 shows that BlockFi's objection to Main's claim was "IC," which corresponds to "Claim improperly asserts secured, admin, or priority status and/or is asserted against the incorrect debtor entity." (*Id.* at 1454, 1466.)

3

judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous . . . ." (quoting Frmr. Fed. R. Bankr. P. 8013)); *see also In re Great Atl. & Pac. Tea Co., Inc.*, Civ. No. 14-4170, 2015 WL 6395967, at *2 n.1 (S.D.N.Y. Oct. 21, 2015) (although Fed. R. Bankr. P. 8013 was removed in the new Federal Rules of Bankruptcy Procedure "logic still compels the same conclusion with respect to the appellate powers of the District Court"). Moreover, when addressing mixed questions of law and fact, district courts divide the questions into their respective components, applying the clearly erroneous test to factual findings and a plenary review to questions of law. *In re Brown*, 951 F.2d 564, 567 (3d Cir. 1991).

## III.   DISCUSSION

Main argues that he has legal title to his Bitcoin collateral and that BlockFi merely has a security interest; therefore, he seeks a 100% in-kind distribution of his Bitcoin. (Main Br. at 6–7.) Main raises four issues on appeal: (1) whether the Bankruptcy Court erred in granting BlockFi's Seventeenth Omnibus Objection without requiring it to provide any actual evidence or legal authority; (2) whether the Bankruptcy Court erred in granting the objection solely on the papers without a hearing; (3) whether the Bankruptcy Court erred in granting the objection by relying solely on BlockFi's representations;[5] and (4) whether the Bankruptcy Court erred in relaxing the requirements of Bankruptcy Rule 3007 when granting the objection. (*Id.* at 5.)

BlockFi argues that Main is not entitled to return of his Bitcoin for two reasons: one procedural and one substantive. (BlockFi Br. at 13.) The procedural reason BlockFi cites for why

---

[5] In response to Main's argument that the Bankruptcy Court erred in relying solely on BlockFi's representations, the Court finds that such an argument is not supported by the appellate record, and is a bald assertion without a legal basis. It is clear to the Court that the Bankruptcy Court thoroughly reviewed the Confirmed Bankruptcy Plan, the objections presented by BlockFi, and the MLA. Accordingly, Main's argument that the Bankruptcy Court relied solely on BlockFi's representations lacks merit.

Main is not entitled to 100% return of his Bitcoin is that he neglected to timely object to his proposed treatment as a Class 3-b claimant.[6] (*Id.* at 8.) BlockFi argues that Main therefore waived his right to now object.[7] (*Id.* 18–19 (citing *In re Chandler*, 459 B.R. 215, 219 (Bankr. E.D. Pa. 2011))).

The substantive reason BlockFi cites for why Main is not entitled to the return of his Bitcoin is that the lending agreement between the parties—the MLA—states that BlockFi has the right to "pledge, repledge, hypothecate, rehypothecate, sell, lend or otherwise transfer any amount" of the collateral without notifying Main. (*Id.* at 14.) BlockFi maintains that this language means that Main has only an unsecured claim to his Bitcoin. (*Id.* at 17.) For the reasons set forth below, BlockFi is correct as to the merits of Main's claim.

The Confirmed Bankruptcy Plan classifies BlockFi's various creditors and defines the type of recovery each class will receive. (AR at 1280–1373.) The Confirmed Bankruptcy Plan treats creditors in BlockFi's lending program—like Main—as unsecured creditors and shows that they will receive the same level of compensation as other unsecured creditors. (*Id.* at 1314–15.) As BlockFi points out, Main's classification as an unsecured creditor is based on a term he agreed to in Section 4(d) of the MLA, which gives BlockFi broad repledging rights. That section of the MLA states that

> Borrower agrees that Lender may, for its own account, pledge, repledge, hypothecate, rehypothecate, sell, lend or otherwise transfer or use any amount of such Collateral, separately or together with other property, with all attendant rights of ownership from time to time, without notice to the Borrower, either separately or in common with other such cryptocurrency, any or all of the Collateral

---

[6] As BlockFi points out, Main also chose not to participate in a loan repayment program that would have entitled him to a 100% return of his Bitcoin.

[7] BlockFi also addresses Main's other procedural arguments. It argues that the Bankruptcy Court did not err in granting its Seventeenth Omnibus Objection or when it relaxed Rule 3007(e)(6) of the Bankruptcy Code. (BlockFi Br. at 20.) BlockFi maintains that the Bankruptcy Court did not err in ruling on the objection on the papers because Sections 502(b) and 102(1) of the Bankruptcy Code provide bankruptcy courts with flexibility, and Main received ample notice and the opportunity to be heard. (*Id.* at 24–26.)

> and that Lender may do so without retaining in its possession or control for delivery, a like amount of similar Collateral.

(*Id.* at 395.) In prior proceedings in this matter, the Bankruptcy Court construed the Section 4(d) language as conveying to BlockFi sufficient rights in the collateral that a Borrower is properly designated as an unsecured creditor in the context of this bankruptcy proceeding. (*Id.* at 1404–07.)[8] The Court has reviewed the rationale articulated by the Bankruptcy Court, as well as the authority it cited, and finds no error in the Bankruptcy Court's analysis. Therefore, the Court finds no error in the Bankruptcy Court's decision to grant BlockFi's Seventeenth Objection on this basis.

What remains are the parties' procedural arguments. BlockFi argues that at the time Main became a Class 3-b claimant, he did not object or opt into the loan repayment treatment, despite notice of the opportunity to do so. (BlockFi Br. at 19 (citing *In re Chandler*, 459 B.R. at 219 ("A party's failure to raise an objection to a proposed plan prior to the deadline fixed by this Court results in a waiver of a party's right to object."))) According to BlockFi, Main therefore waived his right to challenge his treatment as a Class 3-b claimant. (*Id.* at 17.) For the reasons set forth below, BlockFi's procedural argument provides a second basis to affirm the Bankruptcy Court's decision.

First, Main was given adequate notice of the Confirmed Bankruptcy Plan and the proposed treatment of his claim. On July 31, 2023, prior to the Confirmed Bankruptcy Plan going into effect, BlockFi issued a disclosure statement to provide information to holders of claims for purposes of accepting or rejecting the plan. (AR at 375–76.)[9] That disclosure statement explained

---

[8] The Court notes that during the hearing cited, the Bankruptcy Court articulated its basis for rejecting a similar request by another creditor assigned to Class 3(b) who had deposited Bitcoin as collateral for BlockFi's lending program. That creditor was David Wynns. Mr. Wynns also appealed the Bankruptcy Court's rejection of his request to this Court. The undersigned affirmed the Bankruptcy Court's decision in *Wynns v. BlockFi Inc.*, Civ. No. 23-23282, Letter Order issued Nov. 25, 2024, ECF No. 20. That decision is now on appeal to the Third Circuit.
[9] The Bankruptcy Court approved the disclosure statement. (AR at 1228.)

6

"why holders of claims should vote in favor of the plan," and also provided a detailed chart of projected recoveries for certain classes of claimants. (*Id.* at 401, 404.) That chart included instructions for Class 3-b claimants, like Main, stating that "[e]xcept to the extent that a Holder of an Allowed BlockFi Lending LLC Loan Collateral Claim agrees to a less favorable treatment . . . each such Holder shall be subject to the Set Off Treatment." (*Id.* at 406–07.) The disclosure statement explained what it meant to have a convenience claim versus other types of claims, (*id.* 425), and notably, that "all holders of claims and interests that . . . do not affirmatively opt out . . . are deemed to accept the plan." (*Id.* at 431.) Importantly, the Appellate Record also provides proof the disclosure was made. (*Id.* at 600, 602, 605.)

The Appellate Record thus demonstrates—and Main does not contest—that he received proper notice of the proposed treatment of his claim, the proposed bankruptcy plan, and the accompanying disclosure statement. Main also did not object, opt out, or otherwise vote to reject the Confirmed Bankruptcy Plan. Main does not dispute that he was given ample opportunity to object or assert that he did so. In short, Main received notice of the Confirmed Bankruptcy Plan, but did not challenge it. This is a second, independent basis for affirming the Bankruptcy Court's April 10, 2024 Order. *See In re Chandler*, 459 B.R. at 219. Accordingly, the Court finds no error in the Bankruptcy Court's decision to grant BlockFi's Seventeenth Objection.

Lastly, Main raises his own procedural challenges on this appeal. He argues that the Bankruptcy Court erred in granting BlockFi's Seventeenth Omnibus Objection without requiring it to provide any evidence and in relaxing the requirements of Bankruptcy Rule 3007. (Main Br. at 9.) These arguments are not persuasive for the reasons set forth below.

Generally, after a debtor files for Chapter 11 bankruptcy, a claimant must allege facts sufficient to support his claim. Fed. R. Bankr. P. 3001(f). At the outset, a properly filed proof of

7

claim is *prima facie* evidence of the validity and the amount of the claim. *Id.* Under Section 502 of the Bankruptcy Code, the burden then shifts to the objector to produce evidence sufficient to negate the *prima facie* validity of the filed claim. *See In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992); *see also In re Saha,* Civ. No. 22-15419, 2023 WL 2144437, at *3 (Bankr. D.N.J. Feb. 21, 2023). To successfully object, an objector must produce evidence "which if believed would refute at least one of the allegations that is essential to the claim's legal sufficiency." *See In re Allegheny Int'l, Inc.*, 954 F.2d at 174. Once an objector produces sufficient evidence to negate the validity of one or more of the sworn facts in the proof of claim, the burden shifts back to the claimant. *Id.* The claimant then bears the ultimate burden of establishing a valid claim by a preponderance of the evidence. *Id.*

The Court finds that Main met his procedural obligation as a claimant by filing his proof of claim on March 12, 2023. (AR at 5.) The burden then shifted to BlockFi, and it filed its objection. (*Id.* at 1428.) Specifically, BlockFi's objection stated:

> Each Disputed Claim is being objected to by the Wind-Down Debtors on one or more of the following bases: (1) the Disputed Claim does not match the Wind-Down Debtors' books and records; (2) the Disputed Claim improperly asserts administrative, priority, or secured status; (3) the Disputed Claim was asserted against the incorrect debtor entity, (4) the Disputed Claim was amended by a subsequently filed proof of claim, and (5) the Disputed Claim is duplicative of another proof of claim filed by the same Claimant.

(*Id.* at 1429.) In further support of its objection, BlockFi submitted a Certification of Amit Cheela, the Chief Financial Officer of BlockFi. ("Cheela Certification," AR at 1444–46.) The Cheela Certification constitutes evidence. It attests to the facts relied upon by BlockFi's objection, and also proffered that granting the objection was necessary in order "to prevent improper recovery against the estates." (*Id.* at 1446.) The Objection and the Cheela Certification made clear that Main was attempting to assert property rights in his collateral inconsistent with his rights under

his lending agreement and the Confirmed Bankruptcy Plan. The Objection and Certification thus provided a more than sufficient basis for the Bankruptcy Court to negate Main's *prima facie* showing.

Under Section 502 of the Bankruptcy Code, the burden then shifted back to Main to show that his claim is valid by a preponderance of the evidence. Based on the Appellate Record, the Court finds that Main has failed to meet his burden.

As a separate procedural challenge, Main also argues that he should have received a hearing. (Main Br. at 9.) The Bankruptcy Court, however, did not err in granting BlockFi's objection without a hearing. In relevant part, 11 U.S.C. § 502(b) provides that

> [e]xcept as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount. . . .

Under Section 102 of the Bankruptcy Code, "after notice and a hearing" means "after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances." "After notice and a hearing" "authorizes an act *without* an actual hearing if such notice is given properly *and* if (i) such a hearing is *not requested* timely by a party in interest; or (ii) there is insufficient time for a hearing to be commenced before such act must be done, and the court authorizes such act." 11 U.S.C. § 1022(B)(i) and (ii) (emphases added). Here, Main did not request a hearing. Further, it is apparent to the Court that in light of the large number of claimants and under the particular circumstances of this case, it was within the Bankruptcy Court's discretion to proceed without a hearing when it addressed BlockFi's Seventeenth Omnibus Objection.

9

As a final point, Main argues that the Bankruptcy Court improperly "waive[d] certain of the requirements of Bankruptcy Court Rule 3007(d) and (e)." (Main Br. at 10.) In light of what has been stated above, the Bankruptcy Court did not err in relaxing Bankruptcy Rule 3007. Bankruptcy Rule 3007(d) provides that "objections to more than one claim may be joined in an omnibus objection if all the claims were filed by the same entity, or the objections are based solely on the grounds that the claims should be disallowed. . . ." Additionally, Bankruptcy Rule 3007(e) provides that

> An omnibus objection shall:
>
> (1) state in a conspicuous place that claimants receiving the objection should locate their names and claims in the objection;
>
> (2) list claimants alphabetically, provide a cross-reference to claim numbers, and, if appropriate, list claimants by category of claims;
>
> (3) state the grounds of the objection to each claim and provide a cross-reference to the pages in the omnibus objection pertinent to the stated grounds;
>
> (4) state in the title the identity of the objector and the grounds for the objections;
>
> (5) be numbered consecutively with other omnibus objections filed by the same objector; and
>
> (6) contain objections to no more than 100 claims.

Main takes issue with the fact that BlockFi had objections to more than 100 claims and, thus, the Bankruptcy Court failed to comply with Bankruptcy Rule 3007(e)(6). (Main Br. at 10–11.) In allowing the objections to move forward, this Court finds that the Bankruptcy Court acted properly and in good faith to streamline the claims reconciliation process for the benefit of estate administration. It is apparent based on this Appellate Record that there was no error in granting the objection and relaxing certain requirements of Rule 3007.

In sum, the Court finds that the Bankruptcy Court did not err in granting BlockFi's Seventeenth Omnibus Objection.

## IV. <u>CONCLUSION</u>

For the reasons stated above, the Court will **AFFIRM** the April 10, 2024 Order of the Bankruptcy Court. The Clerk will be instructed to mark this matter **CLOSED.**

Date: March 27, 2025

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**
